## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DAVID A. RANCOURT,**

    *Plaintiff,*

**v.**                         **Case No.: 4:21cv2-MW/MAF**

**MYLIFE.COM, a foreign corporation,**
**and JEFFREY P. TINSLEY, individually**
**and in his capacity as an officer of**
**MYLIFE.COM, INC.,**

    *Defendants.*

_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

This Court has taken to describing the power of arbitration agreements in biblical terms, explaining that, like a rich man attempting to enter the kingdom of heaven, "[a] party wishing to escape the grip of an arbitration clause may have an easier time fitting a camel through the eye of a needle."[1] *Frame v. Alder Holdings, LLC*, No. 4:18cv42-MW/CAS, 2018 WL 5905889, at *1 (N.D. Fla. Feb. 23, 2018). In this case, a more apt analogy may be that the arbitration provision at issue acts as a black hole, grabbing hold of anything and anyone that passes in its vicinity. Here, Plaintiff, despite all his best efforts, has crossed its event horizon and cannot escape.

---

[1] *See Matthew* 19:24.

Pending before this Court is Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Claims, ECF No. 9, and Plaintiff's Response in Opposition, ECF No. 12, as well as attached exhibits. Having considered these, this Court determines that Plaintiff must arbitrate his claims against both Defendants. This Court also determines that a stay, rather than dismissal, is appropriate. Accordingly, Defendants' motion to dismiss and to compel arbitration, ECF No. 9, is **GRANTED in part** and **DENIED in part**. Plaintiff shall arbitrate his claims, and this Court orders this case **STAYED** pending arbitration.

## I. Background

Defendant MyLife.com ("MyLife") sells background reports about individuals. ECF No. 7 ¶ 11. Defendant Tinsley is the founder, CEO, and Chairman of MyLife. *Id.* ¶ 3. MyLife makes some generalized information about an individual available for free online when users search for a name, while more detailed information is available only for a fee. *Id.* Plaintiff alleges that MyLife published or communicated information about him that was false or misleading, including that he has "Court, Arrest, or Criminal Records." *Id.* ¶ 30. But Plaintiff has no arrests or criminal record. *Id.* ¶ 31. Plaintiff alleges one count of negligence against both Defendants, and in the alternative, a claim for libel/defamation or libel/defamation per se. *Id.* ¶¶ 35-49.

Plaintiff became a paid subscriber to MyLife on April 4, 2019, allegedly in the hopes of correcting the false or misleading information available about himself, but was unsuccessful. *Id.* ¶ 33. As a part of his subscription, Plaintiff agreed to MyLife's terms and privacy policy at various points. ECF No. 9 at 3-5. Within those terms is the Arbitration Agreement, which states in part "MyLife.com® and [Plaintiff] . . . agree to arbitrate all disputes and claims arising out of or relating to this Agreement between MyLife.com® and [Plaintiff]." *Id.* at 5. The Arbitration Agreement is five paragraphs in length and also includes a provision that "[a]ll issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement." *Id.* at 6.

Plaintiff initiated this lawsuit in December of 2020 in state court, after which Defendants removed this case, ECF No. 1, and sought both to dismiss and to compel arbitration, ECF No. 9. Plaintiff responded in opposition. ECF No. 12. Defendants' motion is now ripe for decision.

## II. Analysis

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Because the Federal Arbitration Act ("FAA") embodies a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25

(1991) (internal quotations omitted), this Court must approach this question with "a healthy regard for the federal policy favoring arbitrations." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Here, Plaintiff does not challenge the validity of the user agreement he completed when he became a MyLife subscriber, nor does he challenge the validity of the Arbitration Agreement within it. Plaintiff does not challenge that the agreement was in writing, as is required by the FAA. *See* 9 U.S.C. § 2; *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Nor does Plaintiff dispute that the user agreement involves or affects interstate commerce, as is necessary to trigger Congress's power under the Commerce Clause. *See* ECF No. 9 at 11-12. In fact, Plaintiff concedes that he "does not disagree with Defendant's assertions that arbitration agreements generally are presumptively valid, that the arbitration provision at-issue is in writing, or that the parties' transaction in this case involved or affected interstate commerce." ECF No. 12 at 4. He simply argues that "by its plain language, the arbitration clause at-issue does not apply to or cover" Plaintiff's claims before this Court. ECF No. 12 at 1. Thus, according to Plaintiff, this Court is not called to determine the validity of a contract, but simply its relevance to this matter. But while Plaintiff argues that the Arbitration Agreement is irrelevant here, Defendants respond that the clause delegates this "gateway" issue to the arbitrator, and it is to this question that this Court now turns.

A. <u>Who Decides the Scope of the Arbitration Agreement?</u>

The Arbitration Agreement that Plaintiff agreed to on April 4, 2019 states that it applies to "all disputes and claims arising out of or relating to this Agreement between MyLife.com® and [Plaintiff]." ECF No. 9 at 5. By this plain language, the Arbitration Agreement would not appear to be relevant to Plaintiff's claims, which are explicitly and exclusively made as to Defendants' conduct "that occurred through and including April 3, 2019." ECF No. 7 ¶ 34. It is entirely unclear to this Court how alleged negligence or defamation by Defendants, through publishing information about Plaintiff to third parties prior to April 4, 2019, could arise out of or relate to a user agreement Plaintiff signed on April 4, 2019. According to a straightforward reading of the simple terms by which the Arbitration Agreement sets out its own scope, it does not apply to this matter.

However, if straightforward readings were determinative of legal questions, law school would be a lot shorter than three years. As able as this Court may be to state the obvious, Defendants argue that it is not this Court's role to do so. Rather, the Arbitration Agreement includes the clause that "[a]ll issues are for the arbitrator to decide, including the scope of this arbitration clause . . .," ECF No. 9 at 6. Defendants argue that even when it is obvious that an arbitration agreement does not apply to a dispute between parties, a court must compel arbitration so that an arbitrator can be the one to state the obvious.

"An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). As a matter of contracting, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. Ambiguity in a contract regarding "who should decide arbitrability" triggers a presumption in favor of a judicial—rather than an arbitral—forum, thereby reversing the presumption that pertains to arbitration generally. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). Thus, courts should not assume that parties agreed to arbitrate a gateway issue unless there is "clea[r] and unmistakabl[e]" evidence that they did. *See id.*

Here, the language in the Arbitration Agreement that "[a]ll issues are for the arbitrator to decide, including the scope of this arbitration clause, . . ." is functionally the same as other provisions that the Eleventh Circuit has held to "clearly and unmistakably evince[] the parties' intent to arbitrate all gateway issues." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017). Given this binding precedent, it falls to the arbitrator to decide whether Plaintiff's claims are within the scope of the Arbitration Agreement in this matter.

6

Therefore, Defendants' motion to dismiss and to compel arbitration is **GRANTED in part** as to both of Plaintiff's claims against Defendant MyLife. But, because Plaintiff also argues that this Court cannot compel him to arbitrate his claims against Defendants Tinsley, a non-signatory, this Court must now decide whether Defendants can compel Plaintiff to arbitrate Counts I and II in their entirety—both of which Plaintiff brings against MyLife and Tinsley jointly.

B. <u>Must Plaintiff Arbitrate Claims Against a Non-Signatory?</u>

State law controls whether a non-signatory may enforce an arbitration clause. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) ("The 'traditional principles of state law' that apply under Chapter 1 include doctrines that authorize the enforcement of a contract by a nonsignatory."). Here, the user agreement specifies that the parties chose California law to govern. ECF No. 9-2 at 6. Thus, this Court must enforce the arbitration clause even as to claims against non-signatories if California law requires it do so.

Under California law, one must generally "be a party to an arbitration agreement to be bound by it or invoke it." *Westra v. Marcus & Millichap Real Est. Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 763 (2005) (citations omitted). " 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a

7

dispute that he has not agreed to resolve by arbitration.' " *Id.* However, non-signatories who act as agents of signatories are "entitled to the benefit of arbitration," the same as their principals. *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (Ct. App. 1975) (citations omitted); *see also Westra*, 129 Cal. App. 4th at 767 (2005) (quoting *Izzi v. Mesquite Country Club* 186 Cal. App. 3d 1309, 1319 (1986) (overruled on other grounds)).

Here, Plaintiff's claims against Defendant Tinsley in Counts I and II are clearly entangled with Plaintiff's claims against Defendant MyLife. Each count in the complaint is made against both Defendants, and Plaintiff barely distinguishes between them. *See, e.g.*, ECF No. 7 ¶¶ 41-43. Plaintiff introduces Defendant Tinsley as the founder, CEO, and Chairman of Defendant MyLife, and states that he has "transacted business, including without limitation through and/or on behalf of Defendant MyLife, in Gadsden County, Florida and throughout the United States." *Id.* ¶ 3. Given the entanglement of these claims and given the provision under California law for agents of signatories being "entitled to the benefit of arbitration," *Berman*, 44 Cal. App. 3d at 1004, this Court will compel Plaintiff to arbitrate his claims against Tinsley. Thus, Defendants' motion to dismiss and to compel arbitration is **GRANTED in part** as to Counts I and II in their entirety, against both Defendants.

## C. <u>Must This Court Stay or Dismiss?</u>

Once this Court determines that it must refer a lawsuit to arbitration, Section 3 of the FAA states that it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Third, Seventh, and Tenth Circuits have held that section 3 *only* allows courts to stay, not dismiss, cases referred to arbitration. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994). But the Fourth, Fifth, and Ninth Circuits have held that section 3 also allows for dismissal. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

However, the Eleventh Circuit has not explicitly weighed in on this question. *See Valiente v. Holiday CVS, LLC*, No. 20-CV-20382, 2020 WL 2404701, at *2 (S.D. Fla. May 12, 2020). But Eleventh Circuit precedent strongly suggests this Court should stay this action rather than dismiss it. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found

that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them.").

The Eleventh Circuit certainly has upheld district court orders dismissing cases subject to arbitration. *Valiente*, 2020 WL 2404701, at *2. But "[o]n its face, Section 3 appears to leave the Court with only one option when it determines that an issue in a suit is 'referable to arbitration: . . . the Court 'shall . . . stay the trial of the action.' " *Ruiz v. Millennium Square Residential Ass'n*, No. 1:19-CV-03765 (TNM), 2020 WL 3103900, at *9 (D.D.C. June 11, 2020) (quoting 9 U.S.C. § 3). This Court agrees that stay means stay.

### III. Conclusion

For these reasons, Defendants' motion to dismiss and compel arbitration, ECF No. 9, is **DENIED in part**, and this Court orders this case **STAYED** pending arbitration.

For the reasons stated above,

**IT IS ORDERED**:

1. Defendant's motion to dismiss and compel arbitration, ECF No. 9, is **GRANTED in part** and **DENIED in part**.

2. This Court compels the parties to arbitrate all claims in Plaintiff's Complaint.

3. The case is **STAYED** pending arbitration.

4. The parties shall file a notice informing this Court of the arbitrator's

decision in this case within 10 days of that decision.

**SO ORDERED on March 16, 2021.**

**s/Mark E. Walker**
**Chief United States District Judge**
